UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAIRON GRAHAM,

                      Plaintiff,

      v.

COUNTY OF ERIE, TIMOTHY B. HOWARD,
*Erie County Sheriff, in his Individual and*
*Official Capacities,* ROBERT KOCH*, Superintendent*
*of Erie County Holding Center, in his Individual and Official*
*Capacities,* ANTHONY BILLITTIER,
IV*, Erie County Health Commissioner, in his Individual and*
*Official Capacities,* MEAGAN MARY MILLER*, RPA-C,*
DR. JEFFREY WILLIAM MYERS*, D.O.,* OTHER
JANE DOES*, nurses, and* OTHER
JOHN DOES*, Erie County Sheriff's Deputies,*[1]

                    Defendants.

**DECISION AND ORDER**
11-CV-605S

# I. INTRODUCTION

Plaintiff, Lairon Graham, in addition to state-law claims, brings this action under 42 U.S.C. § 1983, alleging that various defendants violated his constitutional rights while in custody at the Erie County Holding Center ("Holding Center"). Two sets of defendants, those from the Holding Center, and those from the Erie County Medical Center ("ECMC"), have each moved to dismiss all or some of Graham's complaint. (Docket Nos. 10, 11.) For the following reasons, the Holding Center Defendants' motion is granted in part and denied in part while the ECMC Defendants' motion is granted in full.

---

[1] At all relevant times, Timothy Howard, Robert Koch, and Anthony Billittier, were employed in various supervisory capacities for Erie County (the "County"). They, along with the County, (collectively the "Holding Center Defendants"), move for dismissal separately from Meagan Miller and Dr. Jeffrey Myers, medical professionals at the Erie County Medical Center (the "ECMC Defendants").

## II. BACKGROUND

**A.     Facts[2]**

On April 19, 2010, in the course of defending himself from an attack perpetrated by a fellow inmate at the Holding Center, Graham suffered an injury to his right biceps brachii, thus setting in motion a series of events culminating in this litigation. (Compl., ¶¶ 20, 21; Docket No. 1.) Although he did not immediately realize the extent of his injury, the following morning Graham awoke to "excruciating pain" in his right arm, rendering it difficult to even pull the bedsheets off himself. (Id., ¶¶ 22, 23.) He noticed that his arm had filled with blood, was discolored, and exhibited a "Popeye bulge," the latter of which, due to extensive experience in the weight room, Graham recognized as a sign that his biceps was torn. (Id., ¶¶ 24-27.)

Over the course of the next four days, Graham voiced and penned several complaints about his arm to various defendants at the Holding Center, but his injury was not always taken with the seriousness that he believed it warranted. The morning after the incident, Graham showed his arm to a "John Doe" Sheriff's Deputy, who told him to see a nurse, also unidentified at this time, who was making the rounds later that day. (Id., ¶ 28.) The nurse told him that he did not require medical attention. (Id., ¶ 30.) Still in pain on April 23, he requested medical treatment from another sheriff's deputy, who completed a "sick-call slip" in Graham's name.[3]  (Id., ¶ 33.) He was then seen by a separate "Jane Doe" nurse, who simply instructed him to rest his arm for three days. (Id., ¶ 34.) Apparently

---

[2]Facts alleged in Plaintiffs' complaint are accepted as true for the purposes of resolving this motion. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

[3]This deputy is also unnamed. It is unclear from the complaint whether this was the same deputy with whom Graham interacted on April 20.

displeased with this lack of treatment, Graham filled out another sick-call slip, communicating his belief that his biceps was torn. (Id., ¶ 35.) He was subsequently seen by a doctor, who sent him to ECMC. (Id., ¶ 36.)

His diagnosis at ECMC, however, was not unlike the one he received at the Holding Center: Registered Physician's Assistant ("RPA") Meagan Miller, a named defendant, told him his biceps was not torn, diagnosed him with an elbow contusion, and told him that the deformed biceps would heal itself over the coming weeks with no need for any treatment but the intermittent application of ice.[4] (Id., ¶¶ 37-39.)

Back at the Holding Center, Graham took RPA Miller's advice, waiting approximately two weeks for his arm to heal despite being in "constant, excruciating pain." (Id., ¶¶ 44, 45.) By May 7, 2010, however, Graham believed that his biceps had not healed correctly, and submitted another sick-call slip. (Id., ¶ 48.) Presumably receiving no response, he again submitted a slip two days later, but, receiving no care over the next 24 hours, he submitted a sick-call slip for a third time on May 10. (Id., ¶¶ 49 -51.) That night Graham was eventually seen by a doctor, who prescribed physical therapy and referred him to see an "ortho" "ASAP" for follow-up care. (Id., ¶ 52.) Despite this, he was not seen by an orthopedist or a physical therapist for the remainder of his time at the Holding Center, which spanned eleven days. He was released into the custody of the New York State Department of Corrections and Community Supervision on May 21, 2010.[5] (Id., ¶ 53.)

---

[4]Dr. Jeffrey Myers was RPA Miller's supervisor. He approved the diagnosis and prescription. (Compl. ¶ 39.)

[5]A physical therapy session was scheduled for the very day he was scheduled to be released. (Id., ¶ 54.)

Shortly after being transferred, Graham was diagnosed with a torn biceps tendon. (Id., ¶ 56.) Due to the delayed treatment, it was no longer possible to reattach the biceps; instead, doctors eventually performed an Achilles allograft, a far more complicated procedure in which an Achilles tendon is inserted between the biceps tendon and the forearm, linking the two together. (Id., ¶ 58.)  He was left with a ten-inch scar on his upper right arm. (Id., ¶ 61.)

## B.    Procedural History

Graham filed his complaint on July 18, 2011. (Docket No. 1.) After this Court granted Defendants an extension of time to answer or move in response to the complaint (Docket Nos. 107, 108), the Holding Center Defendants filed their motion to dismiss on December 28, 2011 and the ECMC Defendants followed suit on January 3, 2011. (Docket Nos. 10, 11.) Briefing concluded on January 30, 2012, at which time this Court took the motions under consideration.

## III.  DISCUSSION

## A.  Motion to Dismiss Standard – Rule 12(b)(6)

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the

4

plaintiff's favor. <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 129 S. Ct. at 1945 (quoting <u>Twombly</u>, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. <u>Iqbal</u>, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. <u>Id.</u> at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." <u>Blue Tree Hotels Inv. (Can.), Ltd.</u> <u>v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense. <u>Iqbal</u>, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away. <u>See</u> <u>id.</u> Second, well-pleaded, non-conclusory factual

allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

## B.    42 U.S.C. § 1983

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the United States Constitution and federal law.  See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)). It is under this statue that Graham seeks redress for the alleged lack of medical care he received at the Holding Center.

As a pre-trial detainee, Graham's constitutional right to be free from cruel and unusual punishment in the form of inadequate medical care derives from the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, which is the source of the same right for convicted prisoners.  Thomas v. Nassau Cnty. Corr. Ctr., 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003). Eighth Amendment analysis, however, applies to both claims. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). Under that analysis, Graham must eventually show that Defendants acted with deliberate indifference to his serious medical needs. See Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

Further, Graham must show (or at this stage, plausibly allege) that Defendants were personally involved in the deprivation of his rights. On that score, the Second Circuit

construes personal involvement to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." <u>Black v. Coughlin</u>, 76 F. 3d 72, 74 (2d Cir.1996); <u>see also</u> <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir.1994).

Lastly, to hold Erie County liable, execution of an Erie County policy or custom must have inflicted the injury in question. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).

**C.     Motions to Dismiss**

The Holding Center Defendants seek to dismiss Graham's entire complaint, while the ECMC Defendants seek only to dismiss his constitutional and punitive damages claims, leaving intact his state-law medical malpractice claims. Each motion is discussed in detail below.

### 1.     Holding Center Defendants' Motion

The Holding Center Defendants argue that (1) claims against the individual defendants in their official capacity must be dismissed because they are redundant of Graham's claims against the County, (2) various deficiencies in Graham's notice of claim preclude his state-law claims, (3) Graham has failed to plead sufficient facts demonstrating that the individual defendants can be held liable, (4) the County cannot be held liable under <u>Monell</u>, and (5) punitive damages are unavailable against the County.

#### i.     Official Capacity

Graham concedes that his claim against the individual defendants is redundant and subject to dismissal. <u>See, e.g.</u>, <u>Lore v. City of Syracuse</u>, 670 F.3d 127, 164 (2d Cir. 2012);

<u>Odom v. Matteo</u>, 772 F. Supp. 2d 377, 392 (D. Conn. 2011). The Holding Center Defendants' motion will therefore be granted on this ground.

> ii.    **Notice of Claim**

New York's General Municipal Law § 50-e(1)(a) (McKinney 2010) provides that, as a condition precedent to bringing a state tort action against a municipality and its employees, a plaintiff must timely serve a notice of claim that identifies the claimant, nature of the claim, and the time, place, and manner in which the claim arose. There is no dispute that Graham filed two such notices.

Rather, the Holding Center Defendants argue that the notice was deficient because it did not specifically name them. <u>See, e.g.</u>, <u>Cropsy v. Cnty. of Orleans Indus. Dev. Agency</u>, 66 A.D.3d 1361, 1362, 886 N.Y.S.2d 290 (4th Dep't 2009) ("General Municipal Law § 50–e makes unauthorized an action against individuals who have not been named in a notice of claim.") (Internal citations omitted). However, § 50-h of the same law provides that after service of a notice of claim, the municipality has the right to conduct an examination of the claimant. If conducted, as was the case here, (<u>see</u> Parham Decl., ¶ 3; Docket No. 16), courts "may look to evidence adduced at a section 50-h hearing, and to such other evidence as is properly before the court" in determining under its discretion whether the other party was prejudiced by mistakes, omissions, or irregularities in the notice of claim. <u>D'Alessandro v. N.Y.C. Tr. Auth.</u>, 83 N.Y.2d 891, 893, 636 N.E.2d 1382, 613 N.Y.S.2d 849 (1994); <u>see also</u> Gen. Mun. § 50-e(6). The <u>D'Alessandro</u> court expressly rejected a stricter approach, whereby courts would consider only the "four corners" of the notice of claim. <u>Id.</u>

This Court finds that the notices of claim, together with the § 50-h hearing, provided the County "sufficient information" to satisfy the purpose of the notice of claim by enabling

it to "investigate, collect evidence, evaluate the merit of the claim, and assess the municipality's exposure to liability." See Brown v. City of New York, 95 N.Y.2d 389, 394, 718 N.Y.S.2d 4, 740 N.E.2d 1078 (2000).

During the hearing, Graham identified with sufficient specificity all the details of his claim. He testified to the location and time frame of the events; he described the physical attributes of the people involved, and even identified which shift the John Doe deputies worked. (See, e.g., § 50-h Hr'g Tr., 31; Docket No. 16-1.) Having sufficiently served notice of the facts underlying his claim on the County, Defendants Howard, Koch, and Billittier were on notice that they may be sued under a theory of respondeat superior. See Matter of Felice v. Eastport/South Manor Cent. School Dist., 50 A.D. 3d 138, 148, 851 N.Y.S.2d 218 (2d Dep't 2008) ("[T]he public corporation must have knowledge of the facts that underlie the legal theory or theories on which liability is predicated in the notice of claim; the public corporation need not have specific notice of the theory or theories themselves."). Because Graham has plainly satisfied the purpose of the notice of claim, the Holding Center Defendants' motion on this ground is denied.

The Holding Center Defendants also seek to dismiss Graham's negligent supervision claim on similar grounds, arguing dismissal is appropriate because the negligent supervision claim was not specifically set out in the notice of claim. But Graham stated in his *pro se* notice of claim that the "medical department acted inappropriately and negligible [sic] in handling [his] injury." Of the course, the only reasonable interpretation of this statement is that (despite his malapropism) Graham sought to hold the medical department, an arm of the County, liable for its negligence. As stated in Coleman v. City of Niagara Falls, such a charge

> is sufficient, under the circumstances, to have alerted [the
> municipality] that the plaintiff was asserting culpability based
> upon negligence [ascribed to the municipality] for the conduct
> of [its employee]. Other than negligence in the hiring and
> training of [its employee], the underlying facts do not suggest
> any other possible negligence claim to be asserted against [the
> municipality].

No. 09CV157S, 2010 WL 2869529, at * 6 (W.D.N.Y. July 20, 2010) (report and recommendation).

As noted above, the purpose of § 50-e is not to require potential plaintiffs to list every conceivable legal theory motivating their case, and it does not impose a heightened standard of pleading; instead the notice is sufficient where, "based on the claimant's description, municipal authorities can locate the place, fix the time and understand the nature of the accident." See Brown, 95 N.Y.2d. at 393. "Nothing more may be required." Id.

Further, Graham's hearing testimony reveals that he believed it was common practice at the Holding Center to delay and ignore medical ailments until inmates were discharged or transferred. The logical implication of such a charge is that he sought to hold the County liable for negligent hiring and/or training of its employees, who allegedly carried out this practice.

In sum, the Holding Center Defendants seek to hold Graham to a standard explicitly rejected by the New York Court of Appeals, and thus their motion on this ground is denied. See id.; D'Alessandro, 83 N.Y.2d at 893.

### iii.   Personal and <u>Monell</u> Liability

The Erie County Defendants also argue that Graham's § 1983 allegations are insufficient to hold either the individual defendants or the County liable. This Court disagrees.

Graham has alleged that the individual defendants had knowledge of and/or directly promulgated the deficient policies and customs (or lack thereof) in treating inmates' medical conditions. For example, Graham alleges that "[a]t the time Plaintiff was denied medical treatment, Defendant Erie County and Defendants Howard, Koch, and Billittier knew that inmates and detainees at [the Holding Center] were regularly denied urgently needed medical care, which medical care was often obtained immediately after the inmate was released into the community or into the custody of the New York State Department of Correctional Services." (Compl., ¶ 66.) In contravention of the Holding Center Defendants claim that this is a mere "conclusory allegation," Graham points out several similar situations documented by the Civil Rights Division of the U.S. Department of Justice during its recent two-year investigation of the conditions at the Holding Center. They include, among others, a death as the result of untreated pneumonia, a coma as a result of neglected insulin injunctions, several instances where sick-call slips were ignored, refusal to call an ambulance for an injured inmate, and refusal to administer medication to an inmate with a broken neck and back. (<u>Id.</u>, ¶ 66.)

The County and its supervisory employees were made aware of these allegations from the Justice Department in its June of 2009 "findings letter," which was received well before the occurrence of the events alleged here. Yet, the complaint alleges that the custom or policy leading to those infractions was left unaddressed and led to Graham's injuries.

Such alleged inaction in the face of a pattern of documented shortcomings renders Graham's municipal liability claim plausible. See United States v. Erie County , 724 F. Supp. 2d 357, 373 (W.D.N.Y. 2010) (allegations against the County stemming from the Justice Department's investigation, similar to those alleged here regarding failure to provide adequate medical care, "present plausible claims"); Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) ("Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions"); City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) ("[T]he Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law.").

Further, these allegations also render Graham's claim against the individual defendants sufficiently plausible. It is well-settled that liability may be premised on allegations, as is the case here, that supervisory officials failed to remedy known violations or created a policy under which unconstitutional practices occurred. See, e.g., Black, 76 F. 3d at 74; Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004). Just as these allegations are not conclusory as against the County, they remain so as against the individual defendants. Therefore, the Holding Center Defendants' motion is denied.

#### iv.    Punitive Damages

The Holding Center Defendants correctly argue that punitive damages are not available against a municipality, such as Erie County. <u>See, e.g.</u>, <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 13, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); <u>Ciraolo v. City of New York</u>, 216 F.3d 236 (2d Cir. 2000). Their motion will therefore be granted on this ground.

#### 2.    ECMC Defendants' Motion

As noted, the ECMC Defendants seek dismissal of only those portions of the complaint that charge them with violations of the Fourteenth Amendment and that seek punitive damages. Each will be discussed below.

#### i.    Deliberate Indifference

Graham alleges that the ECMC Defendants were deliberately indifferent to his serious medical needs and thus violated his Fourteenth Amendment rights when they diagnosed his biceps as having sustained only a bruise, not a tear.

To properly plead this claim, an inmate must show that he suffered from a "sufficiently serious" medical condition, <u>Chance</u> 143 F.3d at 702 and that the defendants acted with a "sufficiently culpable state of mind," <u>Hathaway</u>, 37 F.3d at 66.

The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." <u>Sims v. Artuz</u>, 230 F.3d 14, 21 (2d Cir. 2000) (citations omitted). The objective component is "contextual and responsive to contemporary standards of decency." <u>Id.</u> (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992)).

13

Here, accepting Graham's allegations as true, the ECMC Defendants' actions cannot be "characterized by 'wantonness.'" See Sims, 230 F.3d at 21.  Although, according to Graham, he exhibited clear sings of a biceps tear, RPA Miller's misdiagnosis, if one did occur, was just that – a medical error, and medical malpractice does become a constitutional violation merely because the plaintiff is a prisoner. See Smith v. Carpenter, 316 f.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation"); Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (finding negligence in diagnosis or treatment insufficient to state a valid Eighth Amendment claim).

Graham argues that the ECMC Defendants conduct was not merely negligent, but reckless because they were informed of the possibility, or even likelihood, that he suffered a torn biceps. However, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim," Chance, 143 F.3d at 703, and "claims based on differences of opinion over matters of medical judgment[ ] fail to rise to the level of a [section] 1983 violation," Corby v. Conboy, 457 F.2d 251, 254 (2d Cir. 1972). Here, the ECMC Defendants may have disagreed with the opinions of Graham and the medical staff at the Holding Center, and they may have misperceived the source of Graham's symptoms, but their failure to diagnosis Graham with the proper malady does not evince a "culpable recklessness." See Chance, 143 F.3d at 703; see also Byng v. Wright, No. 09 Civ. 9924(PKC)(JCF), 2012 WL 967430, at *11 (S.D.N.Y. Mar. 20, 2012) (failure to diagnose hernia does not satisfy the subjective prong of the deliberate indifference standard); Beaman v. Unger, --- F. Supp. 2d ----, No. 10–CV–6480L,  2011 WL 4829417, at *3

14

(W.D.N.Y. Oct. 12, 2011) (misdiagnosis and failure to recognize the severity of injuries "might conceivably show malpractice, but they do not state an Eighth Amendment claim"); Harris v. Westchester Cnty Med. Cent., No. 08 Civ. 1128(RJH), 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) (collecting cases that find misdiagnosis not actionable under § 1983). The ECMC Defendants' motion is therefore granted on this ground.

### ii.    Punitive Damages

For the reasons just discussed, Graham's state-law punitive damages claim must be dismissed because in the context of medical malpractice, punitive damages may be recovered only when a defendant's conduct evinces "a reckless indifference equivalent to willful or intentional misdoing," see Brooking v. Polito, 16 A.D.3d 898, 899, 791 N.Y.S.2d 686 (2005) (internal quotation marks and citation omitted), or a "wanton and reckless disregard of [a] plaintiff's rights," Lewis v. DiDonna, 294 A.D.2d 799, 800, 743 N.Y.S.2d 186 (2002). Having already determined that the ECMC Defendants' conduct, as alleged, was not recklessly indifferent, their motion on this ground is also granted.

## IV. CONCLUSION

For foregoing reasons, the Holding Center Defendants' motion to dismiss is granted in part and denied in part, while the ECMC Defendants' motion is granted in full.

## V. ORDERS

IT HEREBY IS ORDERED, that the Holding Center Defendants' Motion to Dismiss (Docket No. 10 ) is GRANTED in part and DENIED in part.

FURTHER, that the ECMC Defendants' Motion to Dismiss (Docket No. 11) is GRANTED.

SO ORDERED.

Dated:        May 30, 2012
              Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
Chief Judge
United States District Court